Our next case is Andrew Morgan versus the Allison Crane and Rigging Corporation 23-1747. Mr. Scipio. Good morning. My name is Charles Scipio. I'm counsel for the appellant, Andrew Morgan. The court has granted leave for the EEOC to participate in our argument, so I'd like to start principal argument with eight minutes, cede five minutes of my time to the EEOC. Reserve two minutes for rebuttal. Since I have ceded my time, I want to address briefly what I think might be some of the more important issues in the field. A reasonable jury could have determined that Mr. Morgan had an actual disability under the ADA because of her ADA. When we talk about the ADA here, are we talking about the amended ADA or the ADA? The amended ADA, Your Honor. It's an important distinction, isn't it? It is, Your Honor. And because of that, in the court below, the case that the district judge relied on was the McFarland case from this court. That case was an intentional application of the pre-2008 amendments to the ADA, but it used language that I think was sort of an artful and didn't necessarily make that distinction in the opinion. But as a consequence of that, I think many courts, including this court, have looked at that and determined that a temporary impairment can never be a disability under 2008 amendments. That's just simply an incorrect statement of the law. As the EEOC, I think, is going to argue, and as we argued in our brief, Mr. Morgan's injury was easily a disability under the 2008 amendments that the ADA and the district court erred in concluding to the contrary. Because it was minor, not because it was temporary. Because, excuse me, Your Honor? Because it was, it's a qualifying disability, I think you're saying because it was minor, not because it was temporary. Yes, Your Honor. Yes, a minor injury, but a minor impairment lasting less than six months can be a disability under the amendments to the ADA. He was out for, when he started after his injury, he had restrictions. I don't think there's any question about that in the record. He started off with a 15-pound lifting restriction, went to 30, and he was under a restriction. These were restrictions suggested, as it were, by a chiropractor, is that right? Yes, Your Honor. Is that enough? I think it is, Your Honor, because a chiropractor is qualified in Pennsylvania. I know people have strong opinions about this, but a chiropractor can look at somebody and say, yes, you do have a back issue. And I think it's worth noting that in the court below, there's evidence that my client spoke to the supervisor, also the decision maker, and the decision maker dissuaded him from filing a workers' comp claim. He had to eat these medical bills himself. The company had said, hey, look, this is a comp claim because you got injured at work and you saw a real physician, got an MRI. Maybe there would have been evidence that he had a herniated disc. A lot of the evidence in this case comes from Mr. Morgan, Mr. Morgan. And crediting that, though, why is that more than a mere scintilla? It doesn't really put into dispute issues of trial of fact. Because I understand your first point, which is, well, perhaps there's a legal error here that McFarland doesn't really apply the way the court cited it. OK. But I don't assume you'd be arguing that duration is not a relevant factor within the determination of disability, right? And the district court can still consider it, right? Sure. I'm not saying that the district court can never consider duration. But what I am saying is that even in the EEOC's own interpretive guidance, somebody who has a back injury with a 20-pound lifting restriction for two months, that's a qualifying disability under the ADA. And so when you have somebody who had a disability for, I think, roughly the same period of time, and the judge says that's not an actual disability under the ADA, that's legal error. That's just sort of unavoidable. That's just clearly not the right decision. So with respect to the regarded asks, did the district court apply the appropriate analysis? I don't think so, Your Honor. We contended in the brief that the ADA obviously doesn't define what minor is. So minor is more of a fact question when it's at the district court. Defines transitory. Transitory is actually or expected to last less than six months. I think based on Mr. Morgan's testimony, he said credibly that I'm afraid I'm going to get more back flare-ups because of probable movements. He was a laborer. He understood what he was doing. But even if you put that aside, and I think the EEOC agrees with us on this, this wasn't a minor injury if the court concludes that he had an actual disability. Minor was met by Congress to exclude just the most bottom-of-the-barrel types of claims for disability, like somebody who says they have the flu or a cold or something and claims that's a disability. That's not what happened here. He had a real back injury at work. He had difficulty sitting, moving, doing major life activities. And for that reason, I think the district court erred and concluded that he couldn't be regarded as disabled under the ADA. I'd like to move just very quickly to the failure to accommodate claim. The district court didn't really address that, and I presume that's because the district court concluded that there wasn't a disability. I think if the court concludes here that there was a disability under the 2008 amendments to the ADA. We're not going to conclude whether or not there was a disability, right? I mean, that would be a fact finder. Well, at least on a summary record, Your Honor, the court would say that there is enough evidence of a premeditation case for this to proceed to a trial. And if the court does make that determination, then there is more than enough evidence for failure to accommodate claim to also proceed to trial for some of the reasons that we expressed in the brief. What is it that you're alleging? What is it that you're saying the evidence shows was not accommodated? Well, Your Honor, the day before he was terminated, he said that I can't sit for a 12 hour crane escort job because it hurts my back too much. That's testimony. That's his testimony. But there's also the text messages would say, I can't do this because I have another obligation. Sure, but if that's a credibility determination, that's obviously something the district court never considers in summary judgment. That's something that the jury has to be left to decide. And if the defendant wants to claim that he really had something else to do that day and it wasn't really tied to his injury, that's something you can make to the jury in terms of an argument. But that credibility determination is not something that would weigh whether or not the case actually gets to trial. Sure enough, but it is the court's gatekeeping function to determine whether that's enough evidence and to get beyond a mere scintilla. Do you think that that's enough? I don't think so. And just based on my recollection, I don't think the district court really got too heavy into the text messages and kind of address that too much in the opinion. I think the court was more just focused on what actually happened in the nature of Mr Morgan's actual injuries. So you're suggesting we should we, if we remand this to have the district court address that issue in the first instance? Your Honor, I would say that there's enough evidence on the record for it to simply be reversed or mandate for trial was briefed by the parties. The district court just didn't address it for whatever reason. I think that there's more than enough there for that claim to just go to trial without any further briefings. There's two more claims. One was the common law wrongful discharge claim. We briefed this extensively. This is a murky area in Pennsylvania law. I think Mr Morgan's intent should have been inferred when he's speaking to the decision maker and he's being told, look, this isn't a workers' compensation claim, when it clearly was. Well, how do we look at an intent? Because the Pennsylvania cases that found a common law claim for wrongful discharge are very different from this situation. This is a situation where I think you're asking us, or maybe your colleague is, to find a wrongful discharge claim because the I think that's sort of right, Your Honor. I mean, the one case that the appellee cited was the Donovan case from the District of New Jersey that interpreted PA law. What the Donovan case said was it was an employee who had a discussion with his employer. They talked about workers' comp. It was very obvious, but the judge said in that case that that wasn't enough. I think that's kind of an outlier. I also think that the facts of this case command a different result. When you're speaking to your employer and the employer says to you, especially the boss, the person who's capable of this isn't a workers' comp injury, I think the intent should have been inferred that he probably would have filed for workers' comp, and if his employer had accurately advised him of his rights under the Workers' Compensation Act, we might be in a different situation. I'm trying to figure out how does that morph into a claim for wrongful discharge. Maybe, I could see if you're arguing, maybe you are, maybe it is subsumed in your argument, that if you were arguing that the employer intended to file a wrongful discharge claim and retaliated against him for that by firing him, that's one scenario, but I don't think that's, maybe that's what you're arguing, but you're arguing more that the act of dissuasion rises to the same kind of tortious contract that we have in state cases, which is actually a penalty against the employer for discharging someone because they actually filed the complaint. It's hard for me to make that fit, you know what I mean? I do understand, your honor, maybe I could address some more, but I am out of time, but what I would say is that I think what the district court was focusing on was whether Mr. Morgan's statements to his supervisor were a protected activity, if you're looking at it within the rubric of a retaliation claim under Title VII or any other anti-discrimination statute. It's different from open discharge, though, isn't it? Well, I think it is, but there's been, I think we cited some case law in our brief that kind of says that most courts will look at it within that rubric and say, did the employee engage in some type of protected activity? I think the conversation with the supervisor was a form of protected activity, even if it raises his hand and say, I am going to file for workers' compensation. Unless there's any other questions, I yield the balance of my time to you. It just, can you help clarify what remains of a retaliation claim? Because there's some sparring in the briefs here, but it's not clear to me what occurred. Sure, your honor. There was a retaliation claim pled under the ADA and the PHRA, and they're construed co-extensively. It wasn't briefed by the appellee in the summary judgment motion. The district court didn't address it, I believe. Well, did you raise it? I understand that you made a reference in one of your judgment briefs to saying, well, they haven't addressed our retaliation claim, so they're waiving it. When the district court's dismissing the whole case, do you then, do you flag this and say, hold on, your honor, there was a retaliation claim that you never got to? What I would say, your honor, is I'm not aware of any case that requires a party to- I understand that. If the district court entered judgment dismissing your entire case, and there was a claim that was never resolved, I'm trying to understand what you did to raise that before the district court, before it was led into error. Because I assume the district court did not understand that you were raising a separate retaliation claim. And I just don't, I'm curious, was there supplemental briefing? Was there a motion for reconsideration? Was there a letter? Anything? No, your honor. The case was dismissed on summary judgment, and a notice of appeal was filed the next day. So there was not a motion for reconsideration filed in the court below. But your argument is that there was an improperly granted motion for summary judgment because it was on grounds that were never raised by the defendant. Yes. Is this an appeal of a non-final order then? I mean, I guess I'm- The district court did enter a judgment in order saying it was finally dismissing of all claims in the case, but it did not address the retaliation claim. I think we kind of break this extensively, but Rule 56-F-2 requires that, that the district court say, look, if we're going to dismiss these claims, we're going to give notice to the parties that they have an opportunity to address. And otherwise it creates actual prejudice to the non-moving party. I don't think it's incumbent upon the non-moving party to point out every time a moving party fails to address something that's in the complaint. It's certainly not incumbent, but it might be, it might facilitate the orderly review of a matter if you then come up on appeal and say, there was another claim that the district court never addressed and that was error. I see that that might've been something that the district court could have addressed in the first instance, if it was error at all. That's right. I mean, the court, it certainly could have been handled in a way where we could have raised it by way of a motion for reconsideration or ever raised it with the court, but that was not done on the court floor. Thank you. Thank you, Ron. Good morning, Ms. Yeomans. Thank you, Your Honors. Georgina Yeomans for the Equal Employment Opportunity Commission. Judge Restrepo, we agree wholeheartedly that the distinction between the ADA, the unamended ADA and the 2008 amendments to the ADA is an important distinction, that for whatever reason, sometimes elides the district courts. And I think this case is a perfect example of how that sometimes plays out and an opportunity for this court to clear up some of the confusion. It's the commission- What happened? You don't really see this situation where the district court relies on a case which relied upon different laws than the law before the court. I've seen it before, but it's very rare. Do you have any idea what happened? I think we pointed out in our brief that this actually does happen somewhat frequently in the district courts, that the district courts rely on McFarland or an earlier articulation of pre-amended ADA. And I think part of the confusion may stem from the fact that Congress didn't change much about the language of the ADA when it amended it, but rather made its dissatisfaction with how it had been interpreted by the Supreme Court and frankly by the EEOC prior to the amendments and made clear that it wanted to make the standard a lot easier to meet, that it didn't want courts to be spending so much time on determining the question of coverage, but rather to spend most of the time determining whether there was actual discrimination that took place, making clear that there should be broad coverage under the amended statute. So it's the commission's view that Mr. Morgan proffered enough evidence to fall under two definitions of disability. The first is actual disability. And the second is that we believe he had enough evidence to show that he had a non-minor injury under the regarded as definition of disability. And that's based on Mr. Morgan's evidence that he suffered from an impairment that and during that time he saw a chiropractor 11 to 12 times, that's supported by page 293 of the appendix, and that the impairment caused him severe pain, both in walking and sitting and substantially limited his ability to lift and his ability to bend. In our view, that's enough to show that he was, he had an impairment that substantially limited a major life activity, which is all that is required for the actual disability prong. And it's also our view that impairment was not minor under the regarded as prong. So at bottom, as I understand your position, you'd like an opinion, presidential opinion clarifying the standards under the amended ADA. Absolutely. We think it's important for this court to make clear that the McFarland holding that temporary non-chronic impairments categorically cannot be a disability to make that that is not the law under the amended ADA. And we also think that Mr. Morgan has enough here to defeat summary detriment. You don't disagree that the ADA allows for duration to be considered as all factor. Absolutely not. Of course, we think that duration is one factor that can be considered when duration still remains more than one factor for a regarded as disability claim because the 2008 amendments didn't change that. They didn't, no, for regarded as there's the defense that an impairment is temporary and minor. And that's what McFarland was addressing, was the regarded as claim. It was, that's what was at issue in McFarland. It was, but McFarland cited a case dealing with actual disability. I understand the staircase down into the precedent, but McFarland, McFarland's still correct as a statement of law. I understand that some of the cases it's citing may have not been as helpful in 2012 to cite as other cases that would have made that point. But the principle that a regarded as claim does have this temporal limitation, that still remains law. What you are arguing for is that there shouldn't be a misconstruction of McFarland's language to say that somehow still remains relevant to an actual disability claim under the ADA. Respectfully, I disagree that a temporary non-chronic impairment is categorically not a regarded as impairment because as this court made clear in Eshleman, it's a conjunctive standard. So temporary could still be non-minor and constitute a regarded impairment under the regarded as prong. So the court would need to look at temporary, but also minor. Right, right. Okay. We, just to address the point about whether Mr. Morgan's testimony about his impairment is sufficient, that Judge Meade, I think you asked earlier, it's our view that that testimony combined with his chiropractor's notes is more than enough to establish this impairment. And I don't view Allison Crane to be disputing the actual facts of Mr. Morgan's impairment, simply that they're disputing whether or not it meets the standard for an impairment. So for these reasons, we'd ask the court to vacate what the district court did and remand. I think you'd have to remand for trial no matter what, right? You want us to remand it for the district court to consider it under the appropriate matrix? Oh, I see. I'm sorry. I understand the question now. We think that this court could hold that Mr. Morgan has defeated summary judgment on the questions of whether he's covered under the ADA. This court could alternatively clarify the legal standard and remand for the district court to apply it in the first instance. We think either would be appropriate, but we do think there's enough evidence for this court to reach the holding Thank you. Thank you. Good morning, Your Honors. My name is Paul Mazesky. I represent Allison Crane in this case, and I thank you for the opportunity to appear today. This is my fifth year of law practice and the first time I've been here, so thank you very much. I appreciate being in Philadelphia. I wouldn't do anything to convince you that you made the wrong choices the last 35 years. I would say that 35 years of fighting over whether people are disabled or not gives you quite a perspective on what is or is not a disability, and I think that's part of some of the argument that I think this court should entertain. I think well, as Judge Mate referenced, the fact that a judge has to be a gatekeeper, and I think one of the problems that I've seen in my practice over the years in handling these types of cases is the fact that we're now here on a case that started in 2020 as a result of a young man being discharged. He was under the care of a doctor for, not even a doctor, excuse me, a chiropractor for 48 days. He had some very light limitations in his ability to work, and he was then subsequently terminated for reasons unrelated to a work, unrelated to work. He was terminated because he didn't want to drive this escort vehicle. I think that the facts are really significant here, and I want to talk about them for a couple minutes. Before we get there, isn't it really the underlying issue here as to whether the district court applied the right standard? That's what this case is all about, right? I would think so, Your Honor, but I would agree that, and I think I had a little discussion about whether it should be reversed or should be remanded. We think the standard that was applied was appropriate. Under the amended ADA? Yeah, it's still one of the factors. He can still determine whether or not this person had... Is that what the district court wrote, though? I think everyone's in agreement. It's one of the factors, but did the district court say it's one of the factors? I believe that it did. I think when he looked at the totality of what evidence had been submitted from the plaintiffs relative to his purported disability, he had his own testimony, and his testimony reflected that he had some limitations on his ability to work, and his testimony also reflected that after he had been released by the chiropractor, he admitted in his deposition he felt that he was recovered. So, I mean, is this really a disability? I mean, I beg to differ. I don't see how anybody could have intended for a 28-year-old person who was suffering from these very limited... But is that a factual issue or legal issue? I think it's a great argument for the jury, but I think it's a gatekeeper issue for the judge. When you say gatekeeper, you're really making a policy argument. When you're asking us to say, look, the judge has got to be a gatekeeper, I think what you're arguing is a good argument. I'm not sure it's a legally good argument, but it's a good argument that, look, this is a young 28-year-old guy, and for a little bit of time, he had some issues with his back. Should we be here? Is it a disability claim? But don't we have to look to the language of the statute to answer those questions? Well, sure. And that's where I think that the judge appropriately interpreted what's in the statute. He made the determination based upon what he looked at upon all of the evidence that there was not sufficient evidence for them to establish that there was a disability. But how did he define disability? And correct me if I'm wrong. I thought he defined disability solely on the basis of the limited temporal span of the disability, poor disability. But I think that he looked at it in its entirety. He looked at it in the fact that the individual had only seen the chiropractor. He looked at it in the fact that there was some testimony- You mentioned that earlier. I can't tell you how many times I'm familiar with a situation where a medical doctor has said to someone with a back problem, you need to see a chiropractor. And I know there's, and you said it yourself, there's some debate and discussion about the professionalism or authenticity or however you want to phrase it, of the ability of a chiropractor. But when it comes to back issues, it's certainly, and this is on summary judgment, having someone rely upon the treatment of a chiropractor, I don't think it's uncommon, nor is it unreasonable, nor is it, I think, the kind of thing that would cause the judge to say, well, you should have seen the doctor, especially since the doctor might have said to the guy, you need to see a chiropractor. I would agree that certainly chiropractors have become a little bit more accepted over time. But regardless of that, I think if you look at what the judge found, he looked at all of the evidence based upon what had been presented. And I believe that he found that there was no disability based upon that, which is within his province. I assume you would say that, look, our view here is to step into the shoes of the district court and applying the right standard under the 2008 amendments, there still isn't enough evidence to withstand a motion for summary judgment, right? Because I don't think you've got a good argument to say that the district court didn't say that it's an insurmountable barrier under McFarland. But you could certainly say, well, it doesn't matter. Even if you apply the right standard, there still isn't enough evidence to survive a motion for summary judgment. But then that gets into the questions that my colleagues are asking, which is, but aren't these all factual arguments regarding credibility? And doesn't that then go to a trier fact? Well, I would submit that it does not. I would submit that due to such limited quantity and quality of the evidence submitted by the I just think that the statute just does not give them enough based upon the evidence that they've submitted to establish that there was any kind of actual disability here. It's just not, suppose we thought there was enough to show an actual disability, then what? I would think if you thought there was enough to show actual disability, then you would have to remand it back to the judge for a further finding. Further factual finding or for trial? Well, I think if you find that there was an actual disability, then you have to remand it back to the judge to see if his finding still remains the same, that he did not think that that disability existed and it was not sufficient for the plaintiffs to meet their burden of proof. Let me go back to what Judge was dismissed along with the, as the entire case was dismissed. I mean, the retaliation claim, I believe fits similar with the wrongful discharge claim. There was just not any evidence of a retaliation claim. The judge in his entirely dismissed all the entire case, everything's gone. So the retaliation claim is obviously gone too. He found no disability. He was no retaliation either. I mean, he found there was no evidence that there was a wrongful discharge. That wrongful discharge claim works with the retaliation claim. They're somewhat similar. I mean, they're looking at the same type of issues. He really didn't discuss it, did he? I would agree. He didn't say much about the retaliation claim. Say anything? No, I would be hard-pressed if I to see it in there. I mean, I'm going to ask the same question I asked your adversary. Then why not raise this with the district court? I mean, if you've seen in the briefing, it says, well, Alison Crane has waived any opposition to the retaliation claim. It does not make for summary judgment on this ground. Why not say, oh, in fact we are, and here's why. I think in response to that, due to the fact that he dismissed all of the claims, I think that that took care of all the claims. I don't think it would be, the onus would not be on us to say, well, judge, you wait, you dismissed the case in entirety, but wait a minute. We want to remind you that this retaliation claim is sort of fed through. If it winds up being remanded for that purpose, then perhaps that's an onus that you should have voluntarily pulled. Well, I would agree that possibly looking back and in hindsight, maybe we should have done that. But generally speaking, when you see and review a decision granting a motion for summary judgment in what appears to be a very well-read and reasoned decision, it probably was not something that we looked at and felt we were going to need to bring up because it was, everything else had been so clearly determined. So what did the retaliation claim as you understand? I assume that they're in some way alleging that there was a retaliation based upon the fact that he alleged that he had some type of a work-related disability and he could then not do the job. And we've retaliated against him and tried to, and fired him because he might bring that claim. Or because he was going to pursue workman's comp, right? I guess that's what they're saying because the fact is that, you know, some discussion about he was discouraged from filing a worker's compensation claim. I don't think that's what it says in the record. There was a discussion about whether or not he should or should not file a worker's compensation claim. He testified that he went and did his own independent research on that potential for filing a worker's compensation claim, never filed one. And frankly, he could have filed one at any time. There's a three-year statute of limitations. He's out now, but he could have filed it after he was discharged. He never showed any indication whatsoever that he was going to file a worker's compensation claim. I suspect that probably went out the window when he got his full release on November 25th. And as well, the fact that he continued to work from the time of the alleged injury up until the time of his discharge without any wage loss. They were paying him his regular wage. And I think as well, the one point to recall that the retaliation, you know, they're trying to allege there was some type of retaliation for his refusal to work or for us refusing to accommodate him. The key point to remember on that is on the last day that he was scheduled to work there, he was scheduled to drive as a truck driver, drive a big crane. And I don't know if you've seen Allison crane, they put these huge cranes that are probably as big as the shrimp. You cannot drive that without someone driving the truck to drive it. So he was supposed to drive this followed the crane as a scout. You know, they put a big sign on the oversized truck. He refused to do that. And there's the text messages which are in the record. And after the fact, he comes and alleges, oh, well, I couldn't do this because I couldn't sit that long. Well, none of the medical information that he ever produced anything to say he couldn't sit. The only thing it said was he couldn't lift. He couldn't bend. There was nothing about sitting, standing, driving, which if you've seen doctors write up in terms of restrictions, those are the types of things that they do. So it's clear that there's just really no causal connection between this fella's alleged incident that occurred on September 29th and his termination. He had two incidents that occurred in November, which led to his termination. The one was due to the fact he failed to follow company policy. He was in the yard wearing a hard hat. And the second one, which was the reason for his final termination, is he didn't show up for work. He was scheduled for a shift to show up for work and he didn't show up. He told the guy and there's some colorful language contained in the text messages that he was doing what to him, not showing up. And, you know, when you have that situation, when you have a big crane and you can't drive that crane on the highway, your adversary says that there's also his testimony that he didn't come to work because of his injury. So why isn't that a credibility determination that goes to a trial? That's only something that came up after the fact that didn't come up during any course of communication, credibility, or what's that, which goes to his credibility. I don't think it necessarily goes to his credibility. It goes to the fact that that was never the reason that he gave anybody documented in any fashion until he testified by deposition after he was terminated. And maybe I'm wrong. I thought it was pretty much clear that the reason he didn't show up was because he didn't think he could drive that truck for that amount of time and that the restrictions on him were not just lifting, but also sitting. Am I misreading the record on that? To my understanding and to my recollection, to my review, that there's not a piece of medical documentation in that record that shows he had any restrictions on his ability to sit. His restrictions related solely to lifting. He had about two months, I'm sorry, he had one month, the month of October, 15 pounds. The month of, part of the month of November was lifting 30 pounds. And after November 25, he had a full release. I mean, just in summary, I think the decision issued by the judge is consistent with the law. It's very well reasoned. And we would just ask that this court affirm his decision. Thank you, counsel. Thank you. Don't wait another 35 years to come back. Don't worry, I'm not coming back in 35 years. You may. No. I'll just be as brief as I can. Why don't we start with the sitting restrictions? Is there anything in the record to support? So if I'm looking at Appendix 85, his number, I remember 5th chiropractor's note said, please excuse Andrew Morgan for doing any bending or lifting anything at work over 30 pounds for the next 30 days. That was the restriction that the chiropractor gave in writing. What was the Appendix 35 you said? Appendix 85, I'm sorry. 85, okay. So there's nothing about sitting. There's nothing about sitting, Your Honor. But again, it boils down to whether or not they engaged in the interactive process. He testified very clearly that he talked to the dispatcher that day and said, look, I can't sit for a 12-hour round trip crane escort. It's going to be too painful for my back. If you're sitting for that long, I think anybody who's had a bad back can understand that's an issue. So rather than engaging in any type of interactive process with him or discussing it with him or trying to find a way to accommodate him, they just fired him the next day. And that's protected activity, what he said to the dispatcher. And the temporal proximity there is a day. I mean, I haven't read one district court decision that hasn't said that's enough to establish a causal connection. It's protected activity, but how does that get sitting within the range of his disability? Well, Your Honor, I think when he's, he was kind of working there in a lighter duty capacity, so they were finding things for him to do. So when the dispatcher calls and says, hey, can you do this? He says, I am having trouble sitting for that long. I think it's incumbent upon them as part of the interactive process to have a discussion with okay, maybe you can't do this. Is there something that you can do? But if it's not part of the restrictions that the chiropractor recommended, then why would they have to get into an interactive process? I would say that sitting for that long period of time, even though the chiropractor's notes not super detailed, I think you could make an argument that bending is, when you're sitting in a seat, you're bending, you're moving around to do controls on the truck. That's a stick shift. You have to use a clutch or something like that. That's going to probably inflame somebody's back who has a problem. What are the outer limits of that though? I mean, you're saying, well, I think you're agreeing. There's no limitation on sitting and there's no reason for the employer to think that sitting is within the limitation because it's not in the limitation, but they're supposed to then assume that, well, it's possible that they'll, I mean, how far does that, how far does that duty extend? I'm not saying they have to assume, Your Honor, but I'm saying there's a burden incumbent upon the employer to at least have a discussion and that didn't happen. And what I would just want to touch on briefly is I'm expiring on time. I don't think that the court needs to remand for further fact-finding. I think the court has the record in front of it. The court can determine whether enough is enough to go to trial. And if the court does reverse, it should reverse and send the matter back to trial. Thank you.